**HARR, Secretary of Banking of the Commonwealth of Pennsylvania, v. MacLAUGHLIN.**

**No. 17090.**

District Court, E. D. Pennsylvania.

June 30, 1936.

Harry C. Liebman, of Philadelphia, Pa., for plaintiff.

Charles D. McAvoy, U. S. Atty., of Philadelphia, Pa., for defendant.

WELSH, District Judge.

This action is brought by the secretary of banking of Pennsylvania, in possession of the Merion Title & Trust Company, to recover an alleged overpayment of income tax for the year ending March 31, 1929, in the sum of $9,797.68. The parties have simplified the issue by entering into a stipulation of agreed facts and by the elimination of a substantial portion of the original claims, so that the issue may now be stated briefly.

The Merion Title & Trust Company was, during the years in question, a bank organized under the laws of Pennsylvania. On October 27, 1931, under the provisions of the state law, it was taken over by the secretary of banking, who succeeded to the rights of the bank in a claim filed January 13, 1931, for a refund of income tax paid for the year ending March 31, 1929. The claim for refund was based principally upon a loss sustained on transactions involving the Bryn Mawr Terrace Apartments, which, if allowed as a deduction, would entirely wipe out the profit reported for that year and would entitle the bank, and now the present plaintiff, to the return of the income tax paid. The statement of agreed facts involving the transactions in question shows that the bank had advanced $96,500 to Bowker & Houseworth for the construction of the Bryn Mawr Terrace Apartments. They failed to complete the building, and, by virtue of their default, a mortgage foreclosure was had in 1927 at which the bank purchased the property. It then completed the construction

and thereafter rented the apartments. During the period of operation, losses were sustained which were added to the original cost, so that on March 1, 1929, the books of the bank showed a total investment of $353,144.33. On that date the property was exchanged, subject to an existing mortgage of $100,000, for three vacant lots which were entered on the books at a valuation of $100,000, and there was at that time charged off as a loss $153,144.-33, representing the difference between the total investment and the aggregate amount of the mortgage and the value of the lots received in exchange. A portion of that loss was claimed as a deduction from income, and subsequently upon review by the Commissioner of Revenue an additional loss was allowed representing a part of the uncollected debt due by the original borrowers, Bowker & Houseworth.

For the taxable year ending March 31, 1929, the bank paid an income tax of $17,-384.44 on a reported income of $147,952.-79. Upon consideration of the return and the claim for refund, the Commissioner allowed a refund of $7,586.77, but declined to allow the whole loss on the apartment house as claimed, and fixed the tax liability at $9,797.68. The plaintiff contends that the entire loss on the transactions involving the Bryn Mawr Terrace Apartments is a proper deduction from income reported March 31, 1929, and that, if the loss were allowed, it would exceed the income reported, and therefore no tax became due. They now seek to recover the amount of tax paid and not refunded.

The question raised is whether the loss sustained from the apartment transaction as calculated by the plaintiff and evidenced by the testimony taken on the trial of this case is properly deductible from the income reported for the year ending March 31, 1929.

■ The Revenue Act of 1928, § 112, 26 U.S.C.A. § 112 and note, provides that upon the sale or exchange of property the gain or loss shall be taken into account for income tax purposes, but such gain or loss shall not be recognized if property held for productive use or investment is exchanged for other property to be held for similar purposes. Gain or loss on the sale or exchange of property not held for productive use or investment, but comprising stock in trade or property held primarily for sale, must be taken into account in the calculation of income for tax purposes.

It is contended by the plaintiff that the real estate in question was held by the bank primarily for sale, and the loss therefrom must be deducted from income for the year in which the loss was sustained. The defendant claims that the property in question was held as an investment from which income was derived, and that the loss may not be recognized in the calculation of the income tax.

■ There is no dispute as to the character of the plaintiff's business. It did the usual banking, trust, and title insurance business, and had power to and a license to engage in the real estate business. It insured titles, placed and bought and sold mortgages for commission, leased properties, and maintained a real estate department which acted as a general broker in the handling of real estate and mortgage transactions. During the years 1927 to 1930, it held twenty-nine properties valued at $985,598.25, and in three years sold seventeen. The former officers described the policy of the bank, and, without contradiction, showed that in practically all cases the real estate had been acquired by foreclosure, was held solely for the purpose of sale, and that it was continually offered for sale by the usual real estate methods. The fact that the bank was more active in the buying and selling of mortgages, which is definitely a branch of a real estate dealer's business, does not preclude it from being classed as a dealer. With this evidence and the realization of the practice and the legal limitations upon title and trust companies in the matter of real estate investments, we find that the bank in this case did not hold the real estate in question as an investment or for other permanent use, and that the loss on the Bryn Mawr Terrace Apartments was properly a deductible one from the income reported.

■ The amount of the loss, according to the books of the taxpayer, was $153,144.33, which was arrived at by allowing as a credit against the cost the book value of $100,000 for the three vacant lots. It is admitted that such valuation was an arbitrary one, and had no relation to the actual value of the property. The whole matter of the loss and its deductibility being now before the court, we think it proper to consider, not only the book entries and the calculations of the parties, but also the facts and verification of such entries as may be pertinent to the inquiry. Uncontradicted evidence was submitted of an ap-

praisement made by a real estate expert of long experience in September, 1931. He valued the three lots in question at $250 per front foot, or a total of $25,000, as of March 31, 1929, and he further stated that the value has subsequently declined to $7,-500. The book loss would therefore become an actual loss on the apartment house and the vacant lots transaction of $228,-144.33, which far exceeds the income reported. We therefore believe that the Merion Title & Trust Company, by virtue of these transactions, earned no net income during the year ending March 31, 1929, and that the income tax paid was not in fact due under the Revenue Act of 1928, and that the secretary of banking now in charge of the Merion Title & Trust Company is entitled to a refund of the tax paid in the sum of $9,797.68. Judgment is entered for the plaintiff in that amount.